IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PARK SOUTH LLC, a Washington limited liability company, | ) ) ) | No. 39360-7-III |
| Appellant, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| DENALI CONSTRUCTION LLC, a Washington limited liability company; TAYLOR MOUNTAIN LLC, a Washington limited liability company; and RICHARD LUDWIGSEN, an individual, | ) ) ) ) ) ) ) | |
| Respondents. | ) | |

PENNELL, J. — Park South LLC appeals from a judgment issued in favor of Denali

Construction LLC and Taylor Mountain LLC on three claims related to a property

development dispute: return of earnest money, unjust enrichment, and enforcement of

a construction lien. We agree with Park South that it is entitled to reversal on all three

claims. We further agree Denali and Taylor Mountain improperly recorded a lis pendens

against Park South's property without substantial justification. This matter is reversed and

remanded for further proceedings.

FACTS

This case concerns three Washington limited liability companies: Park South LLC, whose sole member is Patrick Kofmehl; Taylor Mountain LLC, whose two members are Richard Ludwigsen and Josh Nicholson; and Denali Construction LLC, whose sole member is Richard Ludwigsen.

In March 2018, Park South and Taylor Mountain entered into a real estate purchase and sale agreement (the 2018 PSA) whereby Park South agreed to sell six parcels of land to Taylor Mountain. The 2018 PSA required a $25,000 earnest money deposit, which was subsequently tendered by Taylor Mountain. The PSA then failed to close and Park South retained the earnest money.[1]

In November 2018, Park South and Taylor Mountain entered into a joint venture and construction improvement agreement to develop one of the aforementioned six parcels into buildable residential lots. Park South and Taylor Mountain were the only parties to the agreement. Per the joint venture agreement, Park South agreed to pay Taylor Mountain "up to but not more than" $1 million. Clerk's Papers (CP) at 67; *see also id*. at 65. Payments were to be made via monthly invoices documenting "completed" work.

---

[1] The parties dispute who was at fault for the failure of the 2018 PSA to close and, as a result, whether Park South should have returned the earnest money at that time. This disagreement is not pertinent to our disposition of this appeal.

*Id*. at 68. The agreement assigned assumption of risk to Taylor Mountain and specified a completion date of July 31, 2019.

Park South and Taylor Mountain agreed to evenly split the profits from the sale of finished lots. The joint venture agreement also gave Taylor Mountain a right of first refusal: Park South agreed "not to sell" the parcel being developed or any of the other five parcels to a third party without first offering Taylor Mountain the chance to purchase the land under the same terms. *Id*. at 70. Taylor Mountain agreed to "hold . . . Park South harmless against any claims made by [Taylor Mountain's] contractors," and agreed to indemnify Park South against any third-party claims. *Id*. at 69.

Shortly after execution of the joint venture agreement, Taylor Mountain entered into a subcontract with Denali, by which Taylor Mountain agreed to pay Denali $1 million "[t]o furnish and perform all work" on the project. *Id*. at 780. The Taylor Mountain–Denali subcontract incorporated the joint venture agreement and its attached specifications. Both Taylor Mountain and Denali engaged additional subcontractors on the project.

On December 13, 2018, a Spokane County hearing examiner approved "an application" filed by Taylor Mountain's engineering subcontractor "for a Change of Conditions" to modify a plat of land including the parcel that was the subject of the joint

3

venture agreement. *Id.* at 850. The application sought to remove a road, realign four lots, and extend a road. The County's hearing examiner approved the application "subject to *revised* conditions." *Id.*

According to Mr. Ludwigsen, co-owner of Taylor Mountain and sole owner of Denali, the County's revised conditions "significantly changed" the scope of the joint venture project. 1 Rep. of Proc. (RP) (Aug. 23, 2022) at 160. He claimed the conditions were not foreseeable and significantly increased the costs of the project. Nevertheless, Mr. Ludwigsen did not notify Park South about the changes required by the county or the associated increase in the costs of the project until August of the following year.

In the meantime, Taylor Mountain submitted monthly invoices to Park South as contemplated by the joint venture agreement. Although the invoices were generated by Denali, Taylor Mountain requested checks be made payable to Taylor Mountain. Pursuant to those invoices, the parties agree Park South paid Taylor Mountain approximately $707,987.50 for work billed from January through June 2019. Therefore, $292,012.50 remained billable on the $1 million contract.

On June 24, 2019, Mr. Ludwigsen e-mailed Mr. Kofmehl acknowledging that only $292,012.50 remained billable under the joint venture agreement. But in addition to that sum, Mr. Ludwigsen asked Mr. Kofmehl to immediately "cut[] us [a] check for

[$]311,600[.00],” which would enable Taylor Mountain “to finish this plat and consummate the sale to [a third party].” CP at 92, 790.

Two days later, Mr. Kofmehl responded and explained Park South was “unable to undertake any variations” and would not agree to pay more than the contract price. *Id*. at 94.

On July 20, 2019, Taylor Mountain sent three invoices to Park South. Like the previous invoices, the invoices bore a Denali Construction watermark. One of the invoices was for $66,500.00, another was for $12,572.14, and the third invoice was for $497,176.53. Unlike the first two itemized invoices, this last invoice provided no description of any work performed; instead, it consisted of a single line item, for $497,176.53, and a description reading “Change of Conditions Imposed by Spokane County. Refer to *Work Estimate* Attached hereto for detailed breakdown.” *Id*. at 358 (emphasis added). Mr. Ludwigsen eventually acknowledged the vast majority of this last invoice was for work that had yet to be performed at the time he demanded immediate payment. On July 25, Mr. Ludwigsen informed Park South’s attorney in an e-mail that he would “stop work” on the project if these immediate payments were not made. *Id*. at 794.

On August 7, 2019, Mr. Ludwigsen again wrote to Park South’s attorney, stating the terms of the joint venture agreement were insufficient to allow for project completion.

The letter claimed Taylor Mountain and Denali had absorbed out-of-pocket expenses due to the revised conditions imposed by Spokane County. Mr. Ludwigsen claimed Park South owed Taylor Mountain $79,072.14 on "unpaid invoices." *Id*. at 101, 1023. Mr. Ludwigsen also reiterated his desire for an advance payment of $497,176.53. Mr. Ludwigsen's letter also raised a concern about Park South's retention of the earnest money from the failed 2018 PSA. Mr. Ludwigsen closed his letter by demanding a response from Park South and payment of moneys within two days.

Park South did not accede to Taylor Mountain's demands. Instead, on September 6, 2019, Park South and Taylor Mountain entered into a vacant land purchase and sale agreement (the 2019 PSA) for seven parcels of land, including the parcel already under development.[2] Mr. Ludwigsen executed the agreement on behalf of Taylor Mountain. The 2019 PSA terminated the joint venture agreement, disclaimed the accusations in Mr. Ludwigsen's August 7 letter, and explicitly stated Taylor Mountain would not incur additional expenses on the project. The 2019 PSA again required Taylor Mountain to tender $25,000 in earnest money, but the parties agreed the $25,000 from the failed 2018 PSA would roll over and satisfy this obligation. *See* 1 RP (Aug. 23, 2022) at 28, 56.

---

[2] On August 10, almost four weeks prior to execution of the 2019 PSA, Patrick Kofmehl sent an e-mail to Mr. Ludwigsen's business partner, Josh Nicholson, stating he would like to see the project completed.

6

> The 2019 PSA provided Taylor Mountain
>
> has had full and ample opportunity to thoroughly review, inspect, and
> evaluate the Property and any improvements, and is completely satisfied
> with the status and condition of the Property and fully acknowledges that
> [Taylor Mountain] is purchasing the property, expressly, on an "as-is" basis.
> . . . .
> . . . [Taylor Mountain] expressly waives its right to receive any disclosure
> statements . . . .

CP at 129, 805, 1973; Ex. P-14. The 2019 PSA specifically "advised" Taylor Mountain

"to investigate whether there is a sufficient water supply to meet [Taylor Mountain's]

needs." CP at 126, 1968; Ex. P-14.

According to the terms of the 2019 PSA, Denali was to provide a separate signed

statement acknowledging its agreement to the 2019 PSA's terms. This never happened.

The 2019 PSA listed a closing date of October 10, 2019. Park South later agreed to

extend the closing date to November 30. While the 2019 PSA was pending, two

subcontractors recorded liens against Park South's property, alleging unpaid invoices

by Denali.

The 2019 PSA failed to close as scheduled on November 30. Taylor Mountain

sought another extension of the closing date, but Park South declined. Park South

subsequently satisfied each lien filed by Denali's subcontractors. Meanwhile, Denali

recorded a lien against Park South's property on April 7, 2020, claiming it was owed $770,995.

In August 2020, Park South initiated an action in Spokane County Superior Court for breach of contract, indemnification/contribution, and unjust enrichment against Taylor Mountain, Denali, and Richard Ludwigsen. In addition to damages, Park South sought attorney fees and costs. The defendants separately answered the complaint and asserted affirmative defenses; and both Taylor Mountain and Denali brought counterclaims against Park South. Taylor Mountain asserted Park South had wrongfully retained its $25,000 in earnest money, and made its own claims of breach of contract and unjust enrichment. Denali asserted unjust enrichment and sought to foreclose on its lien. Taylor Mountain and Denali jointly recorded a lis pendens against six of Park South's parcels.

The case proceeded to a two-day bench trial in August 2022. At trial, Richard Ludwigsen expounded on the claims made by Taylor Mountain and Denali. Mr. Ludwigsen asserted the 2019 PSA fell through because there was an issue with water availability for most of the property, which made financing difficult. He also testified Denali worked on the property after the termination of the joint venture agreement, including as recently as January 8, 2020. However, he agreed Park South had never been

sent any invoices for such work, and agreed the project was not completed when Denali

ultimately left the jobsite.

The trial court issued a ruling against Park South and in favor of Taylor Mountain

and Denali. With respect to Taylor Mountain, the court ordered Taylor Mountain was

entitled to a return of its $25,000.00 in earnest money, plus interest. The court did not

decide whether there had been a breach of the 2019 PSA. Instead, it reasoned "Park South

had no right to retain" the earnest money because the evidence did not establish a breach

by Taylor Mountain. CP at 1508. The court found Denali had added $432,929.26 in value

to Park South's property without compensation and therefore was entitled to relief on its

unjust enrichment counterclaim. The court also ruled Denali had properly recorded an

enforceable lien against Park South's property. Finally, the court determined both Denali

and Taylor Mountain properly recorded their lis pendens. According to the court, Denali's

lis pendens was justified by its lien. Taylor Mountain's lis pendens was justified by its

purported interest in the property pursuant to the right of first purchaser clause contained

in the joint venture agreement. *See id*. at 1510.

The court also ordered Park South to pay Denali $167,389.06 in attorney fees and

costs. Park South moved for reconsideration, which the trial court denied. The trial court

later awarded additional postjudgment attorney fees and ordered a writ of garnishment against Park South.

Park South timely appealed the trial court's rulings in favor of Taylor Mountain and Denali. Park South has not appealed the trial court's denial of its own claims against Taylor Mountain, Denali, and Richard Ludwigsen.

ANALYSIS

*Earnest money*

Park South first challenges the trial court's ruling that Taylor Mountain was entitled to return of the $25,000 in earnest money under the 2019 PSA. This is a question of contract interpretation. Because this dispute does not turn on the credibility of extrinsic evidence, our review is de novo. *Kofmehl v. Baseline Lake, LLC*, 177 Wn.2d 584, 594, 305 P.3d 230 (2013).

Earnest money is the consideration a buyer provides in return for a seller's promise to convey their property. *Id*. at 597. To get back an earnest money deposit, a buyer must "show that [they] did not receive what [they] paid for, that is, the *promise* to sell [them] the land." *Id*. at 598. To satisfy this burden, the buyer must show the seller "'was not ready, willing, and able'" to convey the property. *Id*. at 596 & n.3 (quoting BLACK'S LAW

DICTIONARY 1418 (9th ed. 2009)). As the buyer, Taylor Mountain had the burden here.[3]

The record on review fails to show this burden was met.

The only purported repudiation Taylor Mountain has pointed to, in the trial court

or on appeal, is Park South's failure to disclose a water accessibility issue that Taylor

Mountain claims rendered five-sixths of the property undevelopable. But this was plainly

not a repudiation of the 2019 PSA. In the 2019 PSA, Taylor Mountain "fully

acknowledge[d]" it was "expressly" agreeing to purchase the property "on an 'as-is'

basis." CP at 805. Taylor Mountain disclaimed a right to receive "any" disclosure

statements. *Id*. Taylor Mountain agreed that it "had full and ample opportunity to

thoroughly review, inspect, and evaluate the Property and any improvements" and that

it was "completely satisfied with the status and condition of the Property." *Id*.

There is no basis in the record to disregard the 2019 PSA's "as-is" clause. *See*

*Sloan v. Thompson*, 128 Wn. App. 776, 790, 115 P.3d 1009 (2005) (noting Washington

courts "routinely enforce" such clauses); *see also Mattingly v. Palmer Ridge Homes,*

*LLC*, 157 Wn. App. 376, 396, 238 P.3d 505 (2010). The clause was bargained for by two

---

[3] The trial court reasoned Taylor Mountain was entitled to a return of its earnest money because there was no evidence Taylor Mountain had breached the PSA. This reasoning is not consistent with the governing legal standard, which properly assigns the burden of establishing any breach by Park South to Taylor Mountain.

11

sophisticated parties and was set forth with particularity in the agreement. *See Warner v. Design & Build Homes, Inc.*, 128 Wn. App. 34, 40-41, 114 P.3d 664 (2005). Nor did Taylor Mountain produce any evidence of fraudulent concealment of the purported defect. *See Sloan*, 128 Wn. App. at 791.

The undisputed evidence is that Taylor Mountain received exactly what its $25,000 earnest money paid for: a promise from Park South to sell the property as-is. *See Kofmehl*, 177 Wn.2d at 597-98. Because Taylor Mountain failed to prove any actual repudiation of the contract by Park South, it failed to carry its burden and the trial court erred by awarding Taylor Mountain a return of its earnest money. *See id*. at 596-97; *see also Frickel v. Sunnyside Enters., Inc.*, 106 Wn.2d 714, 721, 725 P.2d 422 (1986).

The trial court's judgment in favor of Taylor Mountain on the issue of earnest money must therefore be reversed.

*Unjust enrichment*

Unjust enrichment is an "equitable remedy." *Puget Sound Sec. Patrol, Inc. v. Bates*, 197 Wn. App. 461, 475, 389 P.3d 709 (2017); *see Young v. Young*, 164 Wn.2d 477, 486, 191 P.3d 1258 (2008). "'[T]he question of whether equitable relief is appropriate is a question of law,' *Niemann v. Vaughn Community. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005), and like all issues of law our review is de novo." *Bank*

of Am., NA v. Prestance Corp.*, 160 Wn.2d 560, 564, 160 P.3d 17 (2007) (alteration in original).

"'Three elements must be established in order to sustain a claim based on unjust enrichment.'" *Young*, 164 Wn.2d at 484 (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991)). The defendant must (1) receive a benefit (2) at the plaintiff's expense, and (3) the circumstances must be such that it would be unjust for the defendant to retain the benefit without payment. *Id*. at 484-85.

Given the terms of the 2019 PSA, Denali has not shown it would be unjust for Park South to retain any benefit conferred by Denali without payment. As of the date of that agreement, Taylor Mountain disclaimed any claims against Park South on its own behalf and on behalf of Denali. And the agreement immediately terminated the joint venture agreement and required Taylor Mountain not to incur any additional expenses on the project going forward. Although Denali technically did not sign the agreement or an accompanying acknowledgment, Denali cannot justly be deemed unaware of the agreement's terms. *See Seattle Mortg. Co., Inc. v. Unknown Heirs of Gray*, 133 Wn. App. 479, 498, 136 P.3d 776 (2006) (noting liability for unjust enrichment "attaches only when the circumstances of the benefit would make it unjust to keep it"). The 2019 PSA was signed by Denali's sole owner, Richard Ludwigsen.

13

There is no evidence that after execution of the 2019 PSA, Park South either encouraged Denali to work on the project or silently acquiesced in such work. *Cf. Irwin Concrete, Inc. v. Sun Coast Props., Inc.*, 33 Wn. App. 190, 194, 653 P.2d 1331 (1982) (holding liability for unjust enrichment attached where landowner "knew about and silently acquiesced in the work").[4] Thus, contrary to the trial court's ruling, equity does not compel Park South to further compensate Denali for any work on the project.

Denali insists equity is on its side because Park South never told it to stop work. But Denali and Park South did not have a contractual relationship. Park South's contract was with Taylor Mountain and Denali was one of Taylor Mountain's subcontractors. Ordinarily, a property owner who retains a general contractor assumes no "direct obligation" to the general contractor's subcontractors. *Del Guzzi Constr. Co., Inc. v. Global Nw. Ltd., Inc.*, 105 Wn.2d 878, 886-87, 719 P.2d 120 (1986). If anyone had a duty to tell Denali to stop working on the jobsite once the joint venture agreement was

---

[4] Denali points to an August 10, 2019, e-mail exchange between Patrick Kofmehl and Josh Nicholson, Richard Ludwigsen's business partner at Taylor Mountain, where Mr. Kofmehl commented he "would like to see this project completed." Ex. D-266. Mr. Kofmehl's e-mail does not indicate Park South encouraged Denali to keep working on the project. For one thing, the e-mail was not directed at Denali. But more importantly, the e-mail predated the 2019 PSA, whereby Taylor Mountain agreed to stop work, by at least several weeks.

terminated, it was Taylor Mountain. To the extent Denali was unaware it needed to stop work on the project,[5] its claim is against Taylor Mountain, not Park South.

The trial court's judgment in favor of Denali on the issue of unjust enrichment must therefore be reversed.

*Validity of Denali's lien*

Park South next challenges enforcement of the lien filed by Denali on April 7, 2020. "A lien is an encumbrance on property to secure payment of a debt." *S.D. Deacon Corp. of Wash. v. Gaston Bros. Excavating, Inc.*, 150 Wn. App. 87, 89, 206 P.3d 689 (2009). In a suit for enforcement of a lien, the claimant bears the burden of proving all of the lien prerequisites were met. *See id*. at 91; *W.R.P. Lake Union Ltd. P'ship v. Exterior Servs., Inc.*, 85 Wn. App. 744, 752, 934 P.2d 722 (1997). In a case involving a lien, this court reviews the trial court's factual findings for substantial evidence and legal conclusions de novo. *See Intermountain Elec., Inc. v. G-A-T Bros. Constr., Inc.*, 115 Wn. App. 384, 390-91, 62 P.3d 548 (2003).

Construction liens are authorized by RCW 60.04.021. To assert a lien under this statute, a claimant must record a notice of lien not later than 90 days after the claimant

---

[5] This claim would strain credulity given Denali's sole member signed the 2019 PSA.

has ceased to furnish materials or services at the owner's behest. RCW 60.04.091;

*see Woodley v. Style Corp.*, 7 Wn. App. 2d 543, 552-53 & n.12, 453 P.3d 739 (2019)

(recognizing authorization of labor or provision of materials by the owner or owner's

agent is required to toll the 90-day filing limit); *Intermountain Elec.*, 115 Wn. App. at 393

(same).

The facts at trial failed to show Denali timely recorded its lien claim. The joint

venture agreement between Taylor Mountain and Park South terminated on September 6,

2019. Given its sole member signed the agreement terminating the joint venture, Denali

certainly knew about this change in events even though it never signed a separate

acknowledgment. There is no evidence Park South said or did anything to encourage

Denali to work on the project after September 6, 2019. Yet Denali did not record its claim

of lien until April 7, 2020. This fell far outside the 90-day filing window. The lien was

therefore invalid. *See Woodley*, 7 Wn. App. 2d at 553.

The trial court's order allowing Denali to foreclose on its lien is therefore reversed.

This disposition also requires reversal of Denali's attorney fee and cost award.

*Lis pendens*

Under RCW 4.28.320, a party to a court action affecting title to real property may

record a lis pendens with the county auditor. A "lis pendens" is "[a] notice, recorded in

the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." BLACK'S LAW DICTIONARY 1117 (11th ed. 2019). A lis pendens has no impact on the parties' substantive rights, but because it clouds title, a lis pendens can interfere with a property owner's efforts to sell land or otherwise transfer ownership. *See 134th St. Lofts, LLC v. iCap Nw. Opportunity Fund, LLC*, 15 Wn. App. 2d 549, 557-58, 479 P.3d 367 (2020); *John Morgan Constr. Co. v. McDowell*, 62 Wn. App. 79, 84, 813 P.2d 138 (1991).

Given the potential harm to a property owner, the legislature has provided that "a party who files a wrongful lis pendens may be liable in damages for doing so." *Samra v. Singh*, 15 Wn. App. 2d 823, 839, 479 P.3d 713 (2020) (citing RCW 4.28.328). Relevant here, a party who records a lis pendens will be "liable to an aggrieved party who prevails in defense of the action in which the lis pendens was filed" if there was no "substantial justification for filing the lis pendens." RCW 4.28.328(3); *see also Samra*, 15 Wn. App. 2d at 839.

Park South has shown it is entitled to cancellation of the lis pendens and for actual damages under RCW 4.38.438(3) because neither Taylor Mountain nor Denali had a substantial justification for recording the lis pendens. In this context, a substantial

justification means a "reasonable, good faith basis in fact or law for believing they have an [ownership] interest in the property." *S. Kitsap Family Worship Ctr. v. Weir*, 135 Wn. App. 900, 912, 146 P.3d 935 (2006). Here, Taylor Mountain's purported interest in the property was its right of first refusal under the joint venture agreement and Denali's purported interest was its lien. But as set forth above, the joint venture agreement—including the right of first refusal—was extinguished by the 2019 PSA. And as previously explained, Denali's lien was filed far outside the 90-day statutory limitation period. Given these fundamental defects, neither Taylor Mountain nor Denali had a substantial legal basis for recording the lis pendens.

Park South is entitled to cancellation of the lis pendens and for damages under RCW 4.28.328(3). We remand for the calculation of actual damages. On remand, the trial court also has discretionary authority under the statute to award attorney fees and costs.

## ATTORNEY FEES AND COSTS

Park South argues Taylor Mountain should be ordered to pay its attorney fees incurred on appeal and at trial pursuant to the fee-shifting provision in the 2019 PSA. *See* CP at 1967 ("[I]f Buyer or Seller institutes suit against the other concerning this Agreement the prevailing party is entitled to reasonable attorney[] fees and expenses."). We agree in part. Park South has prevailed on appeal. Thus, it is entitled to attorney fees

and expenses from Taylor Mountain related to appeal. *See First-Citizens Bank & Trust Co. v. Reikow*, 177 Wn. App. 787, 800, 313 P.3d 1208 (2013) ("When a contract provides for a fee award in the trial court, the party prevailing before [this court] may seek reasonable costs and attorney fees incurred on appeal."). But Park South did not prevail on its own substantive claims at trial, and that aspect of the trial court's judgment has not been appealed. Accordingly, Park South is not entitled to an award of fees and costs incurred at trial.

While Park South is not entitled to attorney fees and costs related to trial under the fee-shifting provision of the 2019 PSA, we reiterate that because we are remanding this matter for a determination of actual damages under RCW 4.28.328(3), the trial court will have discretion to award attorney fees related to the improperly recorded lis pendens.

CONCLUSION

The judgments against Park South on the issues of the earnest money deposit, unjust enrichment, and Denali's lien claim are reversed. We also vacate the trial court's award of attorney fees to Denali and reverse the trial court's judgment that Taylor Mountain and Denali properly recorded their lis pendens. This matter is remanded with instructions to cancel the lis pendens, calculate Park South's actual damages related to

the lis pendens, and assess whether Park South is entitled to discretionary attorney fees in connection with cancellation of the lis pendens.

As the prevailing party on appeal, Park South is entitled to an award of costs against Taylor Mountain and Denali under RAP 14.2, subject to its compliance with RAP 14.4. Park South is also entitled to an award of appellate attorney fees against Taylor Mountain pursuant to the terms of the parties' 2019 PSA, subject to its compliance with RAP 18.1(d).

Given our disposition of this appeal, no action is necessary on Park South's motion objecting to supersedeas decision of trial court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Fearing, C.J.                      Staab, J.